UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER AND COLEEN HYLDBURG, on their own behalf and on behalf of all others similarly situated, | C.A. No. |
| Plaintiffs, | |
| v. | |
| LUMBER LIQUIDATORS INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     JURISDICTION .................................................................................................. 4

III.    PARTIES ............................................................................................................ 4

IV.     FACTUAL ALLEGATIONS ............................................................................... 5

      A.      Lumber Liquidators Represents that its Engineered flooring Products
            Meet California's Strict Emissions Standards for Products it Sells in
            Every State ................................................................................................. 5

      B.      California's Formaldehyde Standards.......................................................... 5

      C.      Lumber Liquidators' Engineered flooring Products Do Not Comply with
            CARB Limits ............................................................................................. 7

V.      FACTS RELATING TO NAMED PLAINTIFFS ............................................. 13

VI.     CLASS ACTION ALLEGATIONS ................................................................... 16

VII.    CAUSES OF ACTION ...................................................................................... 19

COUNT I  FRAUDULENT CONCEALMENT........................................................... 19

COUNT II  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,  15
      U.S.C. §§ 2301, *ET SEQ.* ................................................................................. 21

COUNT III  VIOLATION OF MASS. GEN. LAWS CH. 93A.................................... 22

COUNT IV  BREACH OF EXPRESS WARRANTY ................................................ 22

COUNT V  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY.................... 23

COUNT VI  DECLARATORY RELIEF ..................................................................... 24

VIII.   PRAYER FOR RELIEF .................................................................................... 25

IX.     DEMAND FOR JURY TRIAL ......................................................................... 26

# I.     INTRODUCTION

1.      Defendant Lumber Liquidators, Inc. has been selling engineered "hardwood plywood" flooring products that emit formaldehyde at levels known to pose serious health risks. For years, Lumber Liquidators has known that flooring products it has manufactured in China that are intended to be used in people's homes emit unsafe levels of formaldehyde.  Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being compliant with all limits set by the California Air Resources Board ("CARB") – which it correctly touts as being among the most strict emissions regulations in the nation.  As a result, consumers throughout the country, including people in Massachusetts, have been buying flooring products from Defendant that are unsafe and should not be distributed or sold, and have been unwittingly installing these dangerous products in their homes.

2.      "Engineered hardwood plywood" flooring (hereinafter "engineered flooring") is composed of an assembly of (a) hardwood layers or plies of veneer, or (b) veneers in combination with a platform consisting of lumber core, composite core, a special core material, or special back material, joined with an adhesive.  A face veneer of composed of hardwood or decorative softwood is then affixed to the top surface.[1]

3.      Formaldehyde is a common ingredient in the glue used in the engineered flooring base layer.  If used in low levels, the formaldehyde dissipates quickly.  However, when used higher levels in the manufacture of the flooring, the formaldehyde is released as a gas that emanates from the flooring over time.

4.      Long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.

---

[1] See Cal. Code Regs., tit. 17, § 93120.1(19) (defining "Hardwood plywood").

Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  Numerous studies have also linked exposure to formaldehyde gas in the air to the exacerbation of asthma in formaldehyde-sensitive individuals. Formaldehyde exposure has been recognized to pose a particularly acute risk to children.

5.      Lumber Liquidators supervises and controls the manufacturing of engineered flooring products in several mills in China.  Lumber Liquidators also packages, distributes, markets, and/or sells engineered flooring products that have been manufactured in China to consumers in Massachusetts.

6.      From October 2013 through November 2014, three accredited laboratories found that wood flooring sold by Lumber Liquidators that was produced in China showed high levels of formaldehyde emissions.  The levels of formaldehyde gas emitted by these Chinese-made Lumber Liquidators products were several times the maximum CARB limits and exceeded the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq*.  Similar products manufactured in North America generally had much lower formaldehyde levels, and complied with the formaldehyde emission standards CARB promulgated.

7.      Despite this discrepancy, Lumber Liquidators did not differentiate between its domestically manufactured products and those made in China.  Defendant's labels on its Chinese engineered flooring products state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

8.      In 2014 and early 2015, 60 Minutes news conducted an independent investigation into Lumber Liquidators' Chinese-made flooring products. 60 Minutes sent undercover

investigators to three different mills in China that manufacture flooring on behalf of Lumber Liquidators.  60 Minutes reported that:

> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price.  At all three mills they also admitted [to] falsely labeling the company's laminate flooring as CARB [compliant].[2]

9.     Lumber Liquidators does not give consumers any warnings about unlawful formaldehyde levels in its engineered flooring products.  Instead, along with its product labels, it represents that its flooring products comply with strict formaldehyde standards.  Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards.  Lumber Liquidators' website falsely states, "we not only comply with laws-we exceed them."  "Highest Quality Flooring. GUARANTEED."[3]

10.    Lumber Liquidators has continually sold these products in Massachusetts, and throughout the country at its retail stores, through its retail website, www.lumberliquidators.com, and using its toll free customer service telephone line.

11.    Plaintiffs purchased and installed a Lumber Liquidators engineered flooring product that was manufactured in China, labeled as being CARB compliant, and that Plaintiffs have reason to believe did not comply with CARB standards.  Plaintiffs seek to represent themselves and similarly situated persons who have purchased Defendant's engineered flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in

---

[2] *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to -health-and-safety-violations/ (last visited March 4, 2015).

[3] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015, Page unavailable as of March 4, 2015).

010503-11  781892 V1

Massachusetts ("the putative Class").  Plaintiffs seek restitution of monies they and the putative

Class spent on Defendant's engineered flooring, the cost of replacing the products, injunctive

relief enjoining Defendant's ongoing unlawful, unfair, and fraudulent business practices, and

damages on behalf of themselves and the putative Class.

12.     Plaintiffs have sent Defendant a demand letter identifying violations of Mass.

Gen. Laws ch. 93A.  In the event Defendant does not take the appropriate actions itemized in the

notice within 30 days, Plaintiffs intend to amend their complaint to add a claim for damages

under the Act.

## II.      JURISDICTION

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C.

§ 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the

sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are

citizens of a State different from the Defendant.

14.     This Court has personal jurisdiction over the parties in this action by the fact that

Defendant is a corporation licensed to do business in the state of Massachusetts and actively

conducts business throughout Massachusetts.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the

unlawful practices are alleged to have been committed in this District, Defendant regularly

conducts business in this District, and the named Plaintiffs reside in this District.

## III.      PARTIES

16.     Plaintiffs Christopher and Coleen Hyldburg are residents of Buzzard Bay,

Massachusetts and are consumers within the meaning of Massachusetts General Laws Chapter

93A.

- 4 -

17.     Defendant Lumber Liquidators Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia.  Lumber Liquidators, Inc. distributes, markets, and/or sells engineered flooring products in Massachusetts.

## IV.     FACTUAL ALLEGATIONS

**A.     Lumber Liquidators Represents that its Engineered flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State**

18.     The emissions limits set by the California Air Resources Board ("CARB") are among the most comprehensive and exacting in the country.  These standards have served as a model for national standards being considered by the Environmental Protection Agency.

19.     Defendant invokes these CARB standards and represents to consumers on its website, on its product packaging, and in various other materials that all of its flooring, including its engineered flooring products meet the CARB standards for formaldehyde emissions and are therefore safe.  Defendant unequivocally states that though CARB only legally governs products sold in the state of California, Lumber Liquidators ensures that its flooring products meet the CARB standard no matter where they are sold.

20.     Lumber Liquidators' website states as follows:

> Does CARB only apply to California?
>
> Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country. [4]

**B.     California's Formaldehyde Standards**

21.     In 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

---

[4] http://www.lumberliquidators com/11/flooring/ca-air-resources-board-regulations?Wt.ad—GLOBAL_FOOTER_CaliRegCARB (last visited on March 4, 2015) (emphasis in original).

22.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

23.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, § 93120.2(a).

24.     The CARB Regulations apply to engineered flooring products, which CARB refers to as hardwood plywood (HWPW) and differentiates as two types of flooring:

(a)     Hardwood particleboard with a composite core (HWPW-CC) consists of particleboard and/or medium density fiberboard, or a combination core (a combination of layers of veneer and particleboard and medium density fiberboard).

(b)     Hardwood particleboard with a veneer core (HWPW-VC) consists of hardwood plywood with a core made of a sheet or sheets of veneer – thin sheets of wood that are peeled or sliced from logs.[5]

25.     The CARB Phase 2 Emission Standard that applies to HWPW-VC, and has been in effect beginning January 1, 2010, limits formaldehyde emissions to 0.05 parts per million ("ppm").

26.     The CARB Phase 1 Emission Standard for HWPW-CC in effect from July 1, 2009 through June 30, 2012, limited formaldehyde emissions to 0.08 ppm.  The CARB Phase 2 Emission Standard for HWPW-CC went into effect as of July 1, 2012, and limits formaldehyde

---

[5] Cal Code Regs., tit. 17, § 93120.1(a)(7), (20), (21), (43), (44); §93120.2(a).

emissions to no more than 0.05 ppm[6].  (Hereinafter, the formaldehyde emission standards that apply to both HWPW-VC and HWPW-CC during the respective phase 1 and phase 2 periods will be referred to as the "CARB limit.")

27.     The California Office of Environmental Health Hazard Assessment ("OEHHA") considers safe levels of formaldehyde exposure in the air to be levels that do not exceed 0.076 ppm for acute exposure, 0.027 ppm for 8-hour exposure, and 0.002 ppm for chronic exposure.[7]

28.     Health hazards related to formaldehyde exposure are well-researched and documented.  Non-cancer health effects caused by inhaling formaldehyde in gas form include: 1) sensory irritation of the eyes, nose, and throat, 2) upper respiratory tract pathology, 3) pulmonary function, 4) asthma and atopy, 5) neurologic and behavioral toxicity, 6) reproductive and developmental toxicity, and 7) immunological toxicity.[8]

29.     Human epidemiological evidence is sufficient to conclude a causal association between formaldehyde exposure and nasopharyngeal cancer, nasal and paranasal cancer, all leukemias (myeloid leukemia and lymphohematopoietic cancers as a group).[9]

## C.     Lumber Liquidators' Engineered flooring Products Do Not Comply with CARB Limits

30.     Numerous Lumber Liquidators' products that were manufactured in China have been tested by several different laboratories and have been found to have dangerous levels of formaldehyde that far exceed CARB limits and that pose dangers to human health.

---

[6] Cal. Code Regs., fit. 17, § 93120.2(a)

[7] See Agency for Toxic Substances and Disease Registry Minimal Risk Levels (MRLs) July 2013 http://www.atsdr.cdc.gov/mrls/pdfs/atsdr_mrls_july_2013.pdf. These levels refer to formaldehyde content in indoor air, as opposed to the formaldehyde content in the actual wood products to which the CARB regulations refer.

[8] Environmental Protection Agency, Integrated Risk Information System.  DRAFT Toxicological Review of Formaldehyde – Inhalation Assessment.  June 2, 2010.

[9] Id.

31.     Defendant supervises and/or controls the manufacturing and packaging of engineered flooring products in China that Defendant then distributes, markets, and/or sells in Massachusetts and throughout the United States.  Those engineered flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit.

32.     On information and belief, the Lumber Liquidators' engineered flooring products are manufactured in China using a common formula, design, or process.

33.     After the dangerous formaldehyde levels in Lumber Liquidators' products were featured on the news program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> …
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting- edge technology to provide our customers with top quality and high value flooring.[10]

34.     In addition, the product packaging for Lumber Liquidators' engineered wood flooring states:  "CARB . . . CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  On information and belief, this statement is presented on all Lumber Liquidators' engineered flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

---

[10] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 4, 2015).

35.     Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

36.     Instead of warning consumers about formaldehyde emissions from its flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards.

Regulations and Lumber Liquidators' Compliance

The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWP-CC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.

All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde-emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified. Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California. In addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing.

010503-11 781892 V1

This is done as a monitoring activity to validate ongoing compliance.[11]

37.     Lumber Liquidators materially misrepresents the safety of its engineered flooring products by advertising and representing that its products are compliant with applicable CARB limits when in fact they are not.

38.     Lumber Liquidators makes the material omission of failing to tell consumers that they are buying engineered flooring products with unlawfully high levels of formaldehyde.

39.     These engineered flooring products have been sold by Defendant for use in homes in Massachusetts for more than three years.

40.     Defendant continues to distribute and sell its engineered flooring products to customers in Massachusetts with the representation that they are CARB compliant, even though they are not.

41.     On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its engineered flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its products.

42.     At the same time that Defendant made public statements to consumers that the engineered flooring it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers, Defendant acknowledged the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and

---

[11]

http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_Flooring101 (last visited March 4, 2015).

labor practices, *we do not control our suppliers*.  Accordingly, we cannot guarantee that they

comply with such laws and regulations or operate in a legal, ethical and responsible manner.

Violation of environmental, labor or other laws by our suppliers or their failure to operate in a

legal, ethical and responsible manner, could … expose us to legal risks as a result of our

purchase of product from non-compliant suppliers."[12]

43.     Despite its stated concern that its suppliers might not comply with environmental

regulations, Defendant has failed to sufficiently exercise its quality control over those suppliers

to ensure that they comply with CARB standards, and Defendant continues to sell to

Massachusetts consumers engineered flooring that Defendant obtains from those suppliers.

44.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article

based on a letter to the California Air Resources Board.  The letter and article documented high

formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators, as shown

by tests a certified laboratory conducted on three samples of Chinese-made laminate flooring

sold by Lumber Liquidators.  Enclosed with the letter were the actual test results showing that

the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times

the maximum formaldehyde emission level.  The letter notes that Lumber Liquidators

nonetheless labeled the product as being CARB compliant.

45.     On information and belief, high formaldehyde content resins and glues are less

expensive and dry more quickly than low formaldehyde glues and resins.  By using high

formaldehyde content resins and glues rather than low formaldehyde content resins and glues,

---

[12] Lumber Liquidators February 25, 2014 10-K at p. 14,
http://investors.lumberliquidators.com/index.php?o=25&s=127 (emphasis added).  In the same
filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills:
"We are able to set demanding specifications for product quality and our own quality control and
assurance teams are on-site at the mills, coordinating inspection and assurance procedures."  *Id*.
at p. 5.

- 11 -

Lumber Liquidators' Chinese manufacturers are able to produce engineered flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

46.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's engineered flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-cv-00157 (E.D. Va.).  This case is currently pending.  Lumber Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its flooring products from China emit formaldehyde gas at levels that violate CARB limits.

47.     Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer... the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family.[13]

48.     Based on lawsuits, articles, and blog posts, Defendant knew or should have known that its Chinese-made flooring products were not compliant with CARB standards. Despite this knowledge, Defendant failed to reformulate its flooring products so that they are CARB compliant or to disclose to consumers that these products emit unlawful levels of

---

[13] http://www.Consumeraffairs.com/homeowners/lumber liquidators.html December 2, 2014.

formaldehyde.  Instead, Defendant has sold and continues to sell Chinese-made engineered

flooring in Massachusetts that exceed the CARB limit while continually representing to

consumers that those products are CARB compliant.

49.     During a conference call twelve days after the 60 Minutes report, Lumber

Liquidators' CEO admitted that CARB's preliminary tests that were conducted *before* the 60

Minutes report aired, showed elevated levels of formaldehyde in Lumber Liquidators' flooring.

Nonetheless, Lumber Liquidators continued to claim its products complied with CARB and were

safe.

50.     In light of the false representations Lumber Liquidators has made regarding

formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and

members of the Class would reasonably fear for their safety by allowing the engineered flooring

to remain in their homes.  It would therefore be reasonably prudent to incur the cost of replacing

the engineered flooring rather than continue to incur the risks posed by flooring that may contain

high levels of formaldehyde.

## V.     FACTS RELATING TO NAMED PLAINTIFFS

51.     In September, 2014, Plaintiffs Christopher and Coleen Hyldburg purchased over

1,800 square feet of Chinese-made engineered flooring from a Lumber Liquidators retail store in

Massachusetts.  The packaging stated that the flooring was made in China.

52.     The Hyldburgs purchased the engineered flooring for the purpose of having it

installed in their home.  Their daughter suffers from allergies and is particularly sensitive to

impurities in the air.  They believed hardwood engineered flooring would be healthier.

53.     Mr. Hyldburg has experience with building materials.  He was aware of risks

inherent in formaldehyde and of risks that building products could contain formaldehyde and

other dangerous chemicals.  He was also aware that California has the most exacting emission

- 13 -

regulations in the country.  He therefore specifically set out to ensure that the flooring he would purchase was safe and did not have high levels of formaldehyde or other chemicals.

54.     Prior to purchasing the engineered flooring from Lumber Liquidators, Mr. and Mrs. Hyldburg viewed Lumber Liquidators' website and compared products.  The Hyldburgs saw and specifically noted representations Lumber Liquidators made regarding the safety and compliance of its products – including the claim that its products complied with California regulations.

55.     After viewing products on the Lumber Liquidators website, the Hyldburgs went to the Lumber Liquidators retail store and purchased the engineered flooring.  Mr. Hyldburg specifically noted the label on each box stating "California … Phase 2 Compliant for formaldehyde."

56.     Mr. and Mrs. Hyldburg relied on the representations that the engineered flooring they were purchasing did not contain unsafe levels of formaldehyde.  They would not have purchased the products absent this or a similarly equivalent representation.

57.     At the time the Hyldburgs purchased these engineered flooring products, Lumber Liquidators' representation that the products were compliant with CARB formaldehyde emission standards was false.

58.     At the time of the purchase, Lumber Liquidators also failed to inform the Hyldburgs that the engineered flooring products they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.

59.     In November 2014, approximately 1,300 square feet of the engineered flooring was installed in the Hyldburg's home, covering the entire first floor.

- 14 -

60.     On March 1, 2015, the Hyldburgs learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of many of its products were false and that many of its products contain dangerous levels of formaldehyde. That same day, Mr. Hyldburg ordered a home air test kit from the Home Air Check website.  He received the test kit in the mail, and performed the test by following the instructions included with the test kit.

61.     On March 19, 2015, he received the results from the test kit which showed a formaldehyde concentration of 52 ng/L (42 ppb), and an "Elevated" formaldehyde level.  The report issued a recommendation to "[l]ocate and remove formaldehyde sources" and listed composite or engineered wood products as the main sources of formaldehyde.  These formaldehyde levels are more than 20 times the exposure limit the OEHHA recommends for chronic exposure.

62.     Mr. Hyldburg reported these findings by phone and email to Lumber Liquidators' Customers Relations the next day and asked that they contact him as soon as possible.  He received a form letter in response, ignoring the findings of elevated formaldehyde levels reported and claiming:

> Our products must meet our stringent quality standards and we have implemented controls throughout our supply chain designed to ensure adherence with all applicable regulatory and safety standards. We are confident in the safety of our products which is why many of us proudly install the products we sell in our own homes.

63.     Mr. Hyldburg followed up again with Lumber Liquidators.  They discounted the findings of the test results he presented, insisted there was nothing wrong with the floors in his house, and instructed me to use their air testing kit.

- 15 -

64.     Mr. Hyldburg performed the do-it-yourself tests, and shipped the tests back to ED Labs the following day.  Nearly a month later, he received the results from ED Labs.   They too showed formaldehyde levels well above the OEHHA recommended limits and well above levels that have been shown to cause reduction in lung capacity, to exacerbate asthma symptoms and to cause asthma.  Nonetheless, the letter accompanying the test results suggested that the levels were safe by stating that the World Health Organization has endorsed guidelines of 0.081 ppm as "protective against sensory irritation and long-term health effects."  Neither the accompanying letter nor any other information from Lumber Liquidators accurately stated the recommended levels of the California environmental agencies with whose regulations Lumber Liquidators claims to comply.

65.     In light of the risks to their health, and especially to the health of their daughter, the Hyldburgs now must incur the cost of having their flooring tested and possibly replaced rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

66.     Had the Lumber Liquidators' engineered flooring been CARB compliant as claimed, the Hyldburgs would have been satisfied with their purchase and would keep the engineered flooring installed in their home.

## VI.     CLASS ACTION ALLEGATIONS

67.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

68.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class consisting of:

> All persons in the United States who purchased from Defendant
> one or more engineered flooring products that were for their
> personal use rather than for resale or distribution, that were

- 16 -

>manufactured in China, and that Lumber Liquidators represented
>as being CARB compliant for formaldehyde.

69.     Excluded from the Class are governmental entities, Defendant, its affiliates and

subsidiaries, Defendant's current or former employees, officers, directors, agents,

representatives, their family members, the members of this Court and its staff.

70.     Plaintiffs do not know the exact size or identities of the members of the proposed

Class, since such information is in the exclusive control of Defendant.  Plaintiffs believe that the

Class encompasses many hundreds and perhaps thousands of individuals whose identities can be

readily ascertained from Defendant's books and records.  Therefore, the proposed Class is so

numerous that joinder of all members is impracticable.

71.     Based on the size of the modifications at issue, Plaintiffs believe the amount in

controversy exceeds $5 million.

72.     All members of the Class have been subject to and affected by the same conduct.

All purchased engineered flooring products from the Defendant that were falsely represented as

being known to be compliant with CARB standards for formaldehyde and were therefore safe to

install in homes or businesses.  Instead, the levels of formaldehyde in the flooring products were,

at a minimum, unknown and in many cases emitting unlawful levels of formaldehyde.  The lack

of monitoring to ensure CARB compliance and the resulting lack of CARB compliance was not

disclosed to any Class members.  There are questions of law and fact that are common to the

Class, and predominate over any questions affecting only individual members of the Class.

These questions include, but are not limited to, the following:

a.      Whether Lumber Liquidators properly and adequately monitored their

Chinese manufacturing plants to ensure CARB compliance;

- 17 -

b.      Whether Lumber Liquidators' engineered flooring products that were manufactured in China and sold in the United States exceed the CARB limit for formaldehyde;

c.      Whether Lumber Liquidators falsely labeled and advertised its Chinese-manufactured engineered flooring products as being CARB compliant;

d.      Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.      Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all Class members regarding the levels of formaldehyde in its engineered flooring products;

f.      Whether Lumber Liquidators breached express warranties to Class members regarding its engineered flooring products;

g.      Whether Lumber Liquidators breached implied warranties of merchantability regarding its engineered flooring products;

h.      Whether the above practices caused Class members to suffer injury; and

i.      The proper measure of damages and the appropriate injunctive relief.

73.     The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

74.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class.  They are committed to the vigorous prosecution of the Class's claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

010503-11  781892 V1

75.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  Each Class member is entitled to restitution of the price of the engineered flooring product, and the cost of installation and removal of the unlawfully sold flooring products.  The damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendant's unfair and unlawful practices.

76.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and (b)(3).

## VII.    CAUSES OF ACTION

### COUNT I

### FRAUDULENT CONCEALMENT

77.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

78.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

79.     Lumber Liquidators concealed and suppressed material facts concerning the content of formaldehyde in its Chinese-made engineered flooring products.

80.     Defendant had a duty to disclose the true content of formaldehyde in its Chinese-made engineered flooring products because it was known and/or accessible only to the Defendant, who had superior knowledge and access to the facts, and the Defendant knew it was not known to or reasonably discoverable by Plaintiffs and the Class.  These omitted and concealed facts were material because they directly impact the safety of the flooring products.

Whether engineered flooring was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern.

81.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs and the Class.

82.     On information and belief, Lumber Liquidators has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Class and conceal material information regarding the levels of formaldehyde that exist in its Chinese-made engineered flooring products.

83.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Class's actions were justified.  Lumber Liquidators was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

84.     Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they purchased and retained flooring products that they would not have purchased or installed in their homes had Defendant timely disclosed the fact that the products were not compliant with CARB standards.

85.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich itself.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ.*

86.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

87.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

88.     Plaintiffs and the other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

89.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) – (5).

90.     Lumber Liquidators' flooring that was purchased separate from the initial construction of the structure into which it was to be installed constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

91.     Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, *i.e.*, that the flooring was in compliance with CARB formaldehyde standards, constitutes a written warranty within the meaning of 15 U.S.C. § 2301(6).

92.     Lumber liquidators breached their warranties by manufacturing, selling, and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or by making affirmative representations regarding CARB compliance without knowledge of its truth.

93.     Lumber Liquidators' breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

- 21 -

94.     The amount in controversy of Plaintiffs' individual claims exceeds the value of $25.  In addition, the amount in controversy exceeds the value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this action.

95.     Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.  As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

## COUNT III

## VIOLATION OF MASS. GEN. LAWS CH. 93A

**[Plaintiffs have sent Defendant a notification and demand letter as required under the Act and intend to amend their complaint to add a claim for violations of Mass. Gen. Laws ch. 93A absent a bona fide and adequate offer of settlement within the time provided by the Act.] [This claim will be asserted as a subclass of Massachusetts residents who purchased.]**

## COUNT IV

## BREACH OF EXPRESS WARRANTY

96.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

97.     This Count is asserted on behalf of the Massachusetts subclass.

98.     Throughout the Class Period, Lumber Liquidators has expressly warranted that its engineered flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

99.     Defendant's express warranty that its engineered flooring products comply with the CARB standards appears on every package of engineered flooring Defendant sells or has sold in Massachusetts, including those sold to Plaintiffs and to all Class members.  This express warranty and other substantially similar warranties representing that all of its engineered flooring

- 22 -

products contain safe levels of formaldehyde also appears on Defendant's website, product invoices, and instruction materials.

100.    Lumber Liquidators' warranties became part of the basis of the bargain in selling engineered flooring products to Plaintiffs and Class members.

101.    Lumber Liquidators breached these express warranties by selling and/or distributing the engineered flooring products, which fail to comply with the CARB standards.

102.    Plaintiffs and members of the Class paid money for the engineered flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiffs and the members of the Class did not obtain the full value of the advertised products.  If Plaintiffs and other members of the Class had known the true nature of the flooring products, that the products emitted unlawful levels of a cancer-causing chemical, they would not have purchased the engineered flooring products.

103.    As a result of this breach, Plaintiffs and the members of the Class suffered injury and deserve to be compensated for the damages they suffered.

104.    Plaintiffs and the Class are therefore entitled to recover compensatory damages, declaratory relief, and other relief as specifically prayed for herein.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

105.    Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

106.    This Count is asserted on behalf of the Massachusetts subclass.

107.    Implied in the purchase of the engineered flooring by Plaintiffs and the Class is the warranty that the purchased products are legal, safe, and can lawfully be sold and possessed.

108.    Defendant knew or reasonably should have known that its Chinese-made engineered flooring products were unlawful for sale pursuant to the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.*

109.    When Defendant sold these products, it implicitly warranted that the products were merchantable in that they were legal and could be lawfully possessed and/or sold.

110.    No reasonable consumer would knowingly purchase a flooring product that is toxic, harmful, and illegal to own or possess.

111.    Lumber Liquidators' Chinese-made engineered flooring products are unfit for the ordinary purpose for which they were intended.  These products are illegal, mislabeled, and economically worthless.

112.    As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal, and unsellable products.

113.    Plaintiffs and the Class were damaged in the amounts they paid for the Chinese-made engineered flooring, the amounts they paid to have it installed, and the amounts they now must pay to have it removed.

## COUNT VI

## DECLARATORY RELIEF

114.    Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

115.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendant's sale of engineered flooring products in Massachusetts does not comply with the CARB standards.  On information and belief, Defendant contends that its sale of engineered flooring products complies with the CARB standards.

116.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

- 24 -

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class members, seek the

following relief against Defendant:

A.      An order certifying this action as a class action under Fed. R. Civ. P. 23, defining

the Class as requested herein, appointing the undersigned as Class counsel, and finding that

Plaintiffs are proper representatives of the Class;

B.      A finding and declaration that Defendant's policies and practices of labeling and

advertising the engineered flooring products it sells in California as CARB compliant are

unlawful pursuant to Title 17 of the California Code Regulations, §§ 93120-93120.12;

C.      A finding and declaration that Defendant's policies and practices of distributing

and/or selling engineered flooring products in California with formaldehyde emissions that

violate the CARB standards are unlawful pursuant to Title 17 of the California Code

Regulations, §§ 93120-93120.12;

D.      Injunctive relief prohibiting Defendant from continuing to distribute and/or sell

engineered flooring products that violate the CARB standards;

E.      Restitution of all money and/or property that Plaintiffs and Class members

provided to Defendant for the purchase and installation of Defendant's Chinese-made engineered

flooring products;

F.      Damages in an amount to be determined at trial for damages including actual,

compensatory, and consequential damages incurred by Plaintiffs and Class members;

G.      An award to Plaintiffs and Class members of reasonable attorneys' fees and costs;

and

H.      An award of such other and further relief as this Court may deem appropriate.

## IX.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.


DATED:  May 21, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____
Kristen A. Johnson
BBO #: 667261
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003
kristenj@hbsslaw.com


STEVE W. BERMAN
ARI Y. BROWN
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
(206) 623-7292
steve@hbsslaw.com
ari@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

010503-11  781892 V1